******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATHERINE PERRY *v.* SHARON VALERIO ET AL.
(AC 38405)

Beach, Keller and Harper, Js.

*Argued May 24—officially released August 23, 2016*

(Appeal from Superior Court, judicial district of
Waterbury, Brazzel-Massaro, J.)

*Kent J. Mancini*, with whom was *Abigail T.
Miranda*, for the appellant (plaintiff).

*Cynthia J. Coccomo*, for the appellees (defendants).

*Opinion*

KELLER, J. The plaintiff, Katherine Perry, brought this action as parent and next friend of Magan Perry, her minor daughter,[1] against the defendants, Sharon Valerio and Cindy Jackson's Children's Therapy Services, LLC (limited liability company),[2] seeking damages for injuries alleged to have been sustained when Magan fell while attempting to ambulate with a walker while wearing a leg brace. Valerio, an employee of the limited liability company, was providing physical therapy services to Magan at the time of the incident. The defendants filed a motion to dismiss the complaint, and the trial court granted the motion and rendered judgment dismissing the action on the ground that the plaintiff had failed to provide a good faith certificate and an opinion of a similar health care provider as required by General Statutes § 52-190a. On appeal, the plaintiff claims that the court improperly dismissed her action because it erroneously concluded that her complaint sounded in medical malpractice rather than ordinary negligence. We conclude that the plaintiff was required to comply with § 52-190a and, thus, affirm the judgment of the trial court.

The following facts, as alleged in the plaintiff's one count complaint,[3] and procedural history are relevant to the disposition of this appeal. Magan, a high school student, suffers from myotonic dystrophy and wears leg braces throughout the day. On January 23, 2013, Valerio was at Magan's high school for the purpose of providing physical therapy services to Magan. Valerio's duties included "assisting and supervising [Magan] to attempt to walk with a leg brace and with the assistance of a walker." While Magan "was attempting to walk with the assistance and under the supervision of Valerio," she fell to the ground and sustained injuries to her left leg. Valerio, while acting within the scope of her authority and employment, was negligent and caused Magan's injuries by, inter alia, failing to (1) "properly put on [Magan's] leg brace" before her attempt to ambulate, (2) "properly supervise, monitor or support [Magan] while she was attempting to ambulate with the assistance of the brace and walker," (3) "take such steps as reasonably necessary to prevent" Magan from falling, and (4) "provide adequate support or assistance to [Magan] when [Magan] fell to prevent [Magan] from injuring herself."

The plaintiff commenced the present action on January 31, 2015. On April 1, 2015, the defendants filed a motion to dismiss her complaint, claiming that she had alleged medical malpractice but had failed to comply with § 52-190a.[4] Specifically, the defendants claimed that the plaintiff (1) failed to include a certificate stating that she had made reasonable inquiry giving rise to a good faith belief that grounds existed for an action in medical negligence against the defendants, and (2)

failed to attach a written opinion of a similar health care provider, stating that there appeared to be evidence of medical negligence, that included a detailed basis for the formation of such an opinion. In response to the defendants' motion, the plaintiff filed an objection, an affidavit by the plaintiff, and a surreply to the defendants' reply to the plaintiff's objection. The plaintiff argued that Valerio was not performing professional medical services at the time of the incident and that § 52-190a did not apply because she had alleged ordinary negligence in her complaint.

The court heard argument on June 16, 2015. On September 8, 2015, the court issued its memorandum of decision granting the defendants' motion to dismiss. In its decision, the court first recited pertinent case law with respect to its consideration of a motion to dismiss and the applicability of § 52-190a to medical malpractice actions. The court set forth the plaintiff's argument that her complaint alleged ordinary negligence, rather than medical malpractice, so that she was not required to file a good faith certificate or the written opinion of a similar health care provider. As noted by the court, the plaintiff took the position that a layperson could put a leg brace on Magan, and that such conduct did not require any degree of medical knowledge or skill.[5]

In determining whether § 52-190a was applicable to the plaintiff's action, the court first determined that Valerio, who was licensed by the state as a physical therapist, was a health care provider within the parameters of the statute. Next, in evaluating whether the plaintiff's allegations in her one count complaint sounded in medical negligence or ordinary negligence, the court referenced the standard set forth in *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001) (certification improvidently granted). Using this court's criteria in *Trimel*, the trial court reviewed the complaint and determined that the plaintiff had alleged "that [Valerio] was working with [Magan] specifically and was not simply a third party placing the braces on her legs but was providing much more professional assistance in using the devices and then ambulating." The court concluded: "The sole purpose of the treatment in this case was medical in nature and required professional judgment. Accordingly, because the physical therapy treatment itself was to facilitate [Magan] in using her leg brace, the alleged negligence is substantially related to medical treatment." The court rendered judgment dismissing the plaintiff's action, and this appeal followed.

We begin with the appropriate standard of review and legal principles that guide our analysis of the plaintiff's claim on appeal. "Our Supreme Court has held that the failure of a plaintiff to comply with the statutory

requirements of § 52-190a (a) results in a defect in process that implicates the personal jurisdiction of the court. See *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 401–402, 29 A.3d 451 (2011). Thus, where such a failure is the stated basis for the granting [of] a motion to dismiss, our review is plenary. . . . Further, to the extent that our review requires us to construe the nature of the cause of action alleged in the complaint, we note that [t]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Citation omitted; internal quotation marks omitted.) *Nichols* v. *Milford Pediatric Group, P.C.*, 141 Conn. App. 707, 710–11, 64 A.3d 770 (2013). "[T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded . . . ." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 560, 864 A.2d 1 (2005).

The gravamen of the plaintiff's claim is as follows: "[Section] 52-190a cannot apply to the instant matter because . . . [the] defendants' negligence in failing to properly secure [Magan's] leg brace does not substantially relate to the diagnosis or treatment of [her] condition(s) or involve the exercise of medical judgment. When the alleged acts of a medical professional do not require the exercise of medical judgment . . . incidents of negligence by the medical professional constitute ordinary negligence and not medical malpractice." We agree that the plaintiff's one count complaint includes allegations that Magan's leg brace was not properly secured at the outset of her physical therapy session.[6] This alleged act of negligence by Valerio, however, is not the sole basis for the plaintiff's action. The complaint also alleges, inter alia, that Valerio "failed to properly supervise, monitor or support" Magan while she attempted to ambulate with the assistance of the leg brace and the walker, "failed to take such steps as reasonably necessary to prevent [Magan] from falling," and "failed to provide adequate support or assistance to [Magan] when [Magan] fell to prevent [Magan] from injuring herself." Accordingly, we must determine whether these alleged acts of negligence sound in ordinary negligence, which would not require compliance with § 52-190a, or sound in medical malpractice, which would require compliance with § 52-190a.

As did the trial court, we look to the seminal case of *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 61 Conn. App. 353, in reaching our conclusion. In *Trimel*, the defendants provided physical therapy services to the plaintiff, who suffered from multiple sclerosis and had been confined to a wheelchair for several years prior to the incident at issue. Id., 354. Her physical therapy sessions included transfers to and from her wheelchair, and she performed the transfers without assistance in the presence of a physical thera-

pist. Id. During one of her physical therapy sessions, the plaintiff fell while transferring unassisted from her wheelchair to an exercise mat and sustained injuries. Id., 354–55. She brought a negligence action against the defendants, as health care providers, for allowing her to transfer without supervision, but she did not comply with § 52-190a because she claimed that she had alleged ordinary negligence rather than medical malpractice. Id., 354–55, 360.

In resolving the plaintiff's claim in *Trimel*, this court set forth the following three part test for determining whether the allegations in a complaint sound in medical malpractice. "The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . Furthermore, malpractice presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 357–58.

After stating the applicable test, this court in *Trimel* noted that the defendants were medical professionals and that the plaintiff was at the clinic for her therapy session when she fell. Id., 358. This court further noted that training the plaintiff to perform transfers was a stated goal of therapy, requiring routine assessments by the health care providers of the plaintiff's physical capabilities. Id., 360. This court concluded that "[i]t was a medical professional's judgment that allowed the transfer to proceed unassisted," and that the plaintiff's claim "involved a negligent act or omission during an activity that was substantially related to her treatment." Id., 363–64. Accordingly, the plaintiff's complaint sounded in medical malpractice, and she was required to comply with § 52-190a.

In the present case, the plaintiff does not dispute that she brought this action against the defendants in their capacities as medical professionals. Further, the plaintiff does not dispute that Magan's alleged injuries

occurred during a physical therapy session that arose out of a medical professional-patient relationship. Instead, she argues that Valerio's failure to secure Magan's leg brace did not constitute negligence of a specialized medical nature, nor did it substantially relate to the diagnosis or treatment of Magan's condition or involve the exercise of medical judgment. As previously discussed, however, the alleged acts of negligence in the complaint went beyond the failure to properly secure Magan's leg brace. The plaintiff also alleged that Valerio failed to properly supervise, monitor, or support Magan when she attempted to ambulate with the walker while wearing the leg brace, that Valerio failed to take steps as reasonably necessary to prevent Magan from falling, and that Valerio failed to provide adequate support or assistance to Magan when she fell to prevent the injuries.

We agree with the trial court that the plaintiff's complaint alleges more than ordinary negligence; the complaint sounds in medical malpractice. The claim is of a specialized medical nature because it directly involves Magan's medical condition of myotonic dystrophy and the therapy necessary for her to ambulate with a walker while wearing a leg brace, which was a stated goal of her therapy. The issues involve the appropriate medical standard of care for supervising, monitoring, and supporting Magan during the physical therapy session, including the steps to be taken when she fell to prevent her from injuring herself. The alleged negligent acts or omissions are substantially related to Magan's medical diagnosis and involved the exercise of Valerio's medical judgment. The allegations in the one count complaint suggest that Valerio was required to assess Magan's physical capabilities in determining how to support her while ambulating and in determining the degree of supervision and support necessary for Magan to safely ambulate with her walker while wearing the leg brace. The securing of the leg brace, however routine, was only one component of the overall physical therapy session, and Valerio's alleged failure to properly secure the leg brace was but one of many allegations of negligence in the complaint.[7]

On the basis of our consideration of the three prongs of the *Trimel* test to determine whether a claim sounds in medical malpractice, we conclude that the trial court properly characterized the plaintiff's complaint as a medical malpractice claim. We therefore reach the additional conclusion that the plaintiff was required to satisfy the requirements of § 52-190a (a) by filing a good faith certificate and an opinion by a similar health care provider when she initiated her action. Because she failed to comply with those requirements, we ultimately conclude that the court properly granted the defendants' motion to dismiss pursuant to § 52-190a (c).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the complaint refers to Magan Perry as the plaintiff, it is clear that the only proper plaintiff is Katherine Perry, who brought this action as the parent and next friend of Magan. See *DiPietro* v. *Farmington Sports Arena*, *LLC*, 123 Conn. App. 583, 585 n.1, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012).

[2] The action initially was commenced against Valerio and Children's Family Services, LLC. On March 6, 2015, the plaintiff moved to amend her complaint to correct the name of the limited liability company to Cindy Jackson's Children's Therapy Services, LLC. On March 10, 2015, the plaintiff filed a motion to substitute Cindy Jackson's Children's Therapy Services, LLC, as the defendant in lieu of Children's Family Services, LLC, which motion was granted by the court on March 23, 2015.

[3] In reviewing the trial court's decision to grant a motion to dismiss, "we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 108, 967 A.2d 495 (2009). A motion to dismiss also "invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Tellar* v. *Abbott Laboratories*, *Inc.*, 114 Conn. App. 244, 246, 969 A.2d 210 (2009).

[4] General Statutes § 52-190a provides in relevant part: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . .

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[5] In her affidavit, the plaintiff averred that she and other members of the family routinely removed and secured Magan's leg braces.

[6] We are not convinced that even this isolated allegation is one of ordinary negligence. Because Magan was attempting to ambulate with the walker while wearing her leg brace, we do not know whether the method of securing her leg brace under these circumstances would be different than if Magan was not in her therapy session and was simply ambulating without the assistance of the walker.

[7] We have reviewed all of the allegations in the single count of the plaintiff's complaint in determining whether her complaint sounds in medical malpractice or ordinary negligence. See, e.g., *Nichols* v. *Milford Pediatric Group*, *P.C.*, supra, 141 Conn. App. 707, 716 (blood collection at issue, which may have been routine in nature, occurred as part of plaintiff's physical examination; "we conclude that the trial court properly characterized the plaintiff's complaint as a medical malpractice claim"); *Votre* v. *County Obstetrics & Gynecology Group*, *P.C.*, 113 Conn. App. 569, 580, 966 A.2d 813 ("[w]e conclude that the court properly determined that the complaint in this case sounded in medical malpractice"), cert. denied, 292 Conn. 911, 973 A.3d 661 (2009); *Badrigian* v. *Elmcrest Psychiatric Institute*, *Inc.*, 6 Conn. App. 383, 386, 505 A.2d 741 (1986) (trial court correctly decided plaintiff's case was not medical malpractice action; it was action sounding in ordinary negligence).