******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEVLIN, J., dissenting. In this lawsuit, the plaintiff, Wendy Young, seeks damages for injuries she allegedly received while undergoing a robotic hysterectomy at the defendant, Hartford Hospital. The plaintiff asserts that her complaint sounds only in ordinary negligence and, therefore, that the requirements to attach a good faith certificate and written opinion regarding medical negligence pursuant to General Statutes § 52-190a are inapplicable. The trial court disagreed and granted the defendant's motion to dismiss. The majority reverses based on its view that, when read "holistically and reasonably," the complaint, at least in part, alleges ordinary negligence. In my view, the plaintiff's complaint alleging injury suffered during major surgery caused by a sophisticated piece of medical equipment alleges medical negligence and only medical negligence. Accordingly, I respectfully dissent.

The plaintiff's complaint alleges the following relevant facts.[1] On May 11, 2016, the defendant possessed a robotic surgical system used to assist in performing hysterectomies. The plaintiff, on that same date, had a robotic hysterectomy performed by Catherine C. Graziani, a physician. In the days following the surgery, the plaintiff experienced pain and "a black and blue" on her left side. On June 10, 2016, at an office visit with Graziani, the plaintiff learned that a robotic camera fell on her left side. Graziani had told the defendant's employees in charge of the machine, but the plaintiff was not told of the incident.

The plaintiff's complaint alleged seven specifications of negligence:

"a. allowing defective robotic equipment to be used in assisting with a surgical procedure;

"b. failing to inspect the robotic equipment prior to its use on the plaintiff;

"c. failing to properly secure the camera so that it does not fall on patients;

"d. failing to properly train its medical equipment personnel to recognize that the camera was not secure and could fall on patients;

"e. operating the robot in such a manner to cause the camera to fall;

"f. failing to notify the plaintiff that the camera fell on her;

"g. failing to warn the plaintiff that the camera could fall on her."

The issues raised in the defendant's motion to dismiss were (1) whether the plaintiff's complaint is brought against a health care provider and (2) whether it must

be supported by a certificate of good faith and written opinion from a similar health care provider that there appears to be evidence of medical negligence. See General Statutes § 52-190a. It is undisputed that the complaint lacked such certificate and opinion. If the complaint had, in fact, been brought against a health care provider and alleged only medical negligence, this is a fatal defect.

The trial court concluded that the plaintiff commenced this action against the defendant in its capacity as a health care provider, and that the plaintiff's allegations against the defendant arose out of the medical professional-patient relationship and were of a specialized medical nature, and were related to her medical treatment and involved the exercise of medical judgment. Accordingly, the court determined that the plaintiff's failure to attach to her complaint a certificate of good faith and a written opinion by a similar health care provider in accordance with § 52-190a mandated the dismissal of her claims.

The majority agrees, as do I, that the defendant is a health care provider under applicable Connecticut law; so the question comes down to whether the plaintiff's claim is one of ordinary negligence, as she asserts, or medical negligence. As the majority correctly states, this question is resolved by application of the three part test set forth in *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001). Based on *Trimel*, the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involves the exercise of medical judgment. Id., 357–58.

As to the first prong of *Trimel*, the majority agrees that the defendant has been sued in its capacity as a health care provider. The majority further agrees that the alleged negligence arose out of the medical professional-patient relationship. In the majority's view, however, it is "not clear" that the injury necessarily was caused by negligence of a specialized medical nature or that the alleged negligence involved the exercise of medical judgment.

A review of the cases in this area, both in Connecticut and around the country, demonstrates that allegations like those in the present case involved alleged negligence of a specialized medical nature that is substantially related to medical treatment and necessarily involve the exercise of medical judgment.

In *Nichols* v. *Milford Pediatric Group, P.C.*, 141

Conn. App. 707, 64 A.3d 770 (2013), this court addressed a similar issue of whether negligence alleged during the drawing of a blood sample in the course of a physical exam satisfied the *Trimel* test and, thus, constituted a claim of medical negligence. While his blood was being collected, the plaintiff fell face first onto the floor of the examining room, sustaining an injury. Id., 708. This court stated: "A physical examination is care or treatment that requires compliance with established medical standards of care and, thus, necessarily is of a specialized medical nature." Id., 714. As to whether the alleged negligence related to medical diagnosis or treatment and involved the exercise of medical judgment, the plaintiff alleged that the defendant improperly trained and supervised the agent who collected the plaintiff's blood. Id., 714–15. This court stated that "[a] physical examination is related to medical diagnosis and treatment of a patient; therefore, any alleged negligence in the conducting of such examination is substantially related to medical diagnosis or treatment. Further, whether the defendant acted unreasonably by allowing a medical assistant to collect blood samples unsupervised and in the manner utilized and whether it sufficiently trained its employee to ensure that any blood collection was completed in a safe manner . . . clearly involves the exercise of medical knowledge and judgment." (Internal quotation marks omitted.) Id., 715.

In *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009), the plaintiff sought damages for the "falsehoods and broken promises" with respect to whether the defendant had consulted with and, should have referred the plaintiff to, the high risk pregnancy group at Yale-New Haven Hospital. Id., 573–75. In affirming the dismissal of the plaintiff's complaint, this court noted that, "[a]lthough the plaintiff denominated the claims in her complaint as sounding in tort and breach of contract, the factual allegations underlying the claims require proof of the defendant's deviation from the applicable standard of care of a health care provider . . . . It is not the label that the plaintiff placed on each count of her complaint that is pivotal but the nature of the legal inquiry." Id., 580.

In *Levett* v. *Etkind*, 158 Conn. 567, 265 A.2d 70 (1969), the issue was whether the case should have been presented to the jury under instructions for ordinary negligence or medical malpractice. The plaintiff, an eighty-one year old woman, fell while disrobing in a dressing room while a patient at the defendant physician's office. Id., 569. Our Supreme Court held that, contrary to the plaintiff's claims, "[t]he determination whether the [plaintiff] needed help in disrobing . . . called for a medical judgment on the part of the physician" and, thus, the case was properly categorized as medical malpractice. Id., 573.

The situations where our courts have supported the plaintiff's theory of ordinary negligence are clearly distinguishable from the present case. See, e.g., *Badrigian* v. *Elmcrest Psychiatric Institute, Inc.*, 6 Conn. App. 383, 386, 505 A.2d 741 (1986) (action based in ordinary negligence when patient receiving treatment at defendant's outpatient facility was struck and killed by car as he crossed street to get lunch at defendant's inpatient facility); see also *Multari* v. *Yale-New Haven Hospital, Inc.*, 145 Conn. App. 253, 259, 75 A.3d 733 (2013) (*Trimel* test was not satisfied when grandmother, who was ordered to take disruptive child and leave hospital, tripped and fell while carrying child).

Cases from other states have ruled that medical equipment failure amounts to medical malpractice. See, e.g., *Corbo* v. *Garcia*, 949 So. 2d 366, 370 (Fla. App. 2007) (The court found, in an action where the plaintiff's arms were burned while receiving treatment from a physical therapy machine, that, "[t]he basis for [the plaintiff's] claim is that the petitioners negligently administered a treatment modality. Therefore, her injury occurred during medical treatment, and in order to prove her claim, she must prove that the petitioners did not properly maintain their electrical stimulation equipment, which falls within the standard of care in treating a patient with that equipment. . . . The fact that the injury was caused by the use of the equipment during the rendering of medical treatment takes [the plaintiff's] claim into the realm of medical negligence."); *Goldman* v. *Halifax Medical Center, Inc.*, 662 So. 2d 367, 368, 370 (Fla. App. 1995) (medical malpractice notice requirements applicable to plaintiff's claim of injury when mammogram equipment, improperly calibrated, applied too much pressure, causing plaintiff's silicone breast implants to rupture).

In the present case, the defendant cites to *Moll* v. *Intuitive Surgical, Inc.*, United States District Court, Docket No. 13-6086 (EEF) (E.D. La. April 1, 2014), to support its claim that the plaintiff's complaint satisfies the *Trimel* test. The majority acknowledges *Moll* but ultimately finds it unpersuasive. To be sure, that case is not strictly binding on this court and the plaintiff's complaint in *Moll* was far more detailed than the present case. That said, the reasoning in *Moll* and its application of the Louisiana Supreme Court's six factor test for determining whether particular conduct is considered medical malpractice; see *Coleman* v. *Deno*, 813 So. 2d 303, 315–18 (La. 2002); is instructive. *Moll* concerned the identical robotic hysterectomy procedure involved in the present case and the alleged malfunction of the robotic equipment allegedly caused the plaintiff's injury. In ruling that the claims were properly considered medical malpractice, the District Court noted that (1) the defect in the device is properly considered treatment because, unlike a hospital bed or other objects

the hospital owns, the device is used only in medical procedures, (2) expert testimony is likely necessary to test the surgeon's decision as to whether and how to use the device, (3) the incident occurred during a surgical procedure, and (4) the injury would not have occurred if the plaintiff had not sought treatment. *Moll* v. *Intuitive Surgical, Inc.*, supra, United States District Court, Docket No. 13-6086.

The present case is not one in which a nonpatient is injured on hospital grounds under circumstances unrelated to medical treatment. To the contrary, the plaintiff was allegedly injured during a surgical procedure. Looking beyond the plaintiff's label and to the nature of the legal injury, the defendant's alleged conduct fits squarely within the definition of medical negligence set forth in *Trimel* as well as the cases cited herein. All of the plaintiff's allegations of negligence: allowing the use of the equipment in the surgery, inspection of the equipment prior to its use on the plaintiff, failing to secure the camera, failing to train medical equipment personnel, operating the robot, and failing to properly advise the plaintiff, relate to her medical treatment and involve the exercise of medical judgment. As such, these allegations should be supported by a certificate of good faith and written opinion as to medical negligence.

I would affirm the trial court's judgment of dismissal.

[1] The majority aptly points out that the complaint alleges a "paucity of facts." Indeed, the central allegation of the mechanism of injury—"the plaintiff was told that the robotic camera fell on the plaintiff's left side"—is not an allegation of fact but rather of evidence. Notwithstanding such deficiencies, the court's role on a motion to dismiss is not to examine the sufficiency of the complaint but whether, as a matter of law, the plaintiff cannot state a cause of action that is properly before the court. See, e.g., *Egri* v. *Foisie*, 83 Conn. App. 243, 247–48, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).